Petitioner v. Federal Aviation Administration and Steven Dixon, in his official capacity as Administrator, Federal Aviation Administration, Mr. Tabor for the Petitioner, Mr. Hemminger for the Respondents. May it please the Court and your Honors, I am Steven Tabor, I represent the Petitioner in this case, the City of Scottsdale, Arizona. There are three reasons why this Petition for Review should be granted. First, in February 2018, this Court vacated and remanded all departure procedures that the FAA had implemented in 2014, including the East Flow departures. Second, since then... That was not the remand order. What you have just said is not what the Court ordered. The Court ordered, vacated the new departure routes. And there were no new departure routes for the East. So the only ones that the Court vacated were the West. Your Honor, the Court, the new departure routes, it was clear from the previous Court order in August of 2017 that the new referred to the September 2014 procedures and departure routes that were implemented then, and that was held over into the February 2018. There's no indication from the Court, there's no indication from the FAA in its joint petition for rehearing that the new referred to new departure routes and left out the East Flow departure routes. Because the East Flow was not new. The East Flow was new. The East Flow was new, the departure routes for the East Flow and the West Flow were both new in 2014. Why wouldn't one indication be that Phoenix wasn't injured by the East Flow routes? And so Phoenix wouldn't have had standing to challenge the East Flow routes. So the Court wouldn't have had jurisdiction to vacate the East Flow routes. Your Honor, the Court's decision vacated and remanded the agency action rather than, and did not particularize the particular routes. The entire action was vacated. All of the flight procedures and the departure routes were vacated by the Court in August of 2017. That was limited to the departure routes in February 2018. There was no indication in the judgment or the mandate indicating that the Court's action was limited to simply the Western departure routes that were at issue. Judge Randolph suggested that the Court, by using the word new, was not referring to the flights that were eastbound. And you're saying those eastbound flights were new. Where can I go in the record to confirm that you're correct that the eastbound flights were new? The eastbound, we mentioned it in the brief, in our opening brief, in our reply brief, that there are the indications that the flight procedures were different than previously in 2014. Your brief's not the record, at least not the record in the sense I'm using it. Is there a place in the record we can go to? In the record, there are flight procedures that show that the routes taken by aircraft were substantially different than the ones that were prior to 2014. If you take a look at page 362 of the Joint Appendix, the 2014 procedures, not routes, overlay existing tracks except for certain areas in the Western departure routes. That's correct, Your Honor. However, the new in the order in both the February 2018 order and the August 2017 order meant departure routes or flight procedures that were new as of September 2014 and not new because they didn't overfly the Scottsdale or that there was an overlay. Certainly, the west flow that were at issue that Phoenix was concerned about, there were certain portions of the west flow that went over different areas. But in general, the west flow, they were also not new in the same sense that the routes to the east were new or not new. The new in the court's order refers to before September 2014 or that were new as of September 2014. It was clear that this was the understanding of the FAA and the City of Phoenix when they petitioned for a rehearing in November of 2017 when they understood that all new flight routes and procedures that were mentioned in the August 2017 order met those flight procedures that were new as of September 2014. Even assuming that we vacated all of the routes, not just the western routes, how do you have standing given the one declaration that you have doesn't have any DNF Alfonso Realty Trust case, but there the petitioners had detailed affidavits that indicated that the FAA's action was essentially the proximate cause of their injury of not being able to obtain the requisite permits. You don't have anything approaching that in this case. I think, Your Honor, that the more apt analogy is to the case in the City of Danube Beach where this court found that a letter issued by the FAA gave sufficient standing to both the City and the other petitioners to challenge the fact that there was no EIS. Also in Lujan v. Defenders of the Wildlife, the Supreme Court mentioned the fact that an individual living close to the site of a dam where a dam is to be constructed has standing to sue the Federal Permitting Agency for omitting the EIS, for omitting the EIS, even though the result of the EIS might be that the permit will not be withheld or altered or the fact that the dam won't be constructed. Here, though, we have regulations and policies that have been promulgated about when an EIS presumptively will not be needed. You're not challenging those, are you? Well, in here, no EIS was done. No environmental analysis was done under NEPA. No consultation was done under the National Historic Preservation Act or 4F, the Department of Natural Resources, vacated departure routes for four years now. And the injury, the connection to the decision is the fact that that injury is being done by the noise. The tax base for Scottsdale has been limited because of aircraft noise. And its ability to carry out environmental ordinances is impacted because of the lack of the environmental analysis under NEPA. I see that my time is up. If you have any further questions? Judge Walker? Judge Randolph? No. Thank you. We'll give you some time on rebuttal. We'll hear now from your friend on the other side, Mr. Heminger. Good morning, Your Honors. And may it please the Court, Justin Heminger for the Federal Aviation Administration. I would be happy to answer any questions that the Court has about the Phoenix amended opinion and judgment. But with the Court's indulgence, I'd like to start where this Court always begins and where Judge Wilkins' questions were directed, and that is with the Court's jurisdiction. So Scottsdale seeks to challenge eastern departure routes from the Phoenix airport that had been flown for a number of years, over seven at this point. But it hasn't shown how its interests are injured. Most of the nine eastern routes that Scottsdale is seeking to challenge here, in fact, don't even fly over Scottsdale. Scottsdale also relies on a declaration that's both vague and insufficient. And there's evidence in the record that contradicts and undercuts Scottsdale's standing. Scottsdale also has two other hurdles before you even think about the Phoenix judgment. And those are both finality and timeliness. And for all those reasons, we urge the Court to dismiss the petition and not even get into what the Phoenix judgment may or may not mean. I'm standing just to briefly walk the Court through the evidence here. I'll point the Court to Appendix 1650 to 1658 as showing the eastern routes and demonstrating that they do not, in fact, fly over Scottsdale. Most of them don't even fly over Scottsdale. I would also direct the Court to a declaration that FAA submitted with its brief that explains this same point that these routes do not fly over most of these routes, the eastern routes, don't fly over Scottsdale. It's the Kessler Declaration, and it's in the Respondent's Addendum from pages 12 to 13. So as to routes, so focusing on Scottsdale's declaration, the Phoenix metropolitan area here is a very crowded airspace, and it's not just the Phoenix airport. In fact, there are a number of satellite airports, most notably Scottsdale itself as an airport that's right in the middle of Scottsdale. And so you can't just say planes are flying over us. There are planes everywhere in this airspace. I'd point the Court to Appendix 1998 and Appendix 2000. Those are charts showing flight procedures, not just from the Phoenix airport, but also from Scottsdale's airport, from Phoenix-Deer Valley airport, which is a little bit to the west of Scottsdale and north of Phoenix. So this is a very, there are a lot of planes flying over this entire space. And then also in the record, I would point the Court to Scottsdale's own experts report, which undercuts its standing. Scottsdale, as part of its comments in this process, submitted a report from an aviation expert. And in Appendix 2064, that expert discusses the cumulative noise impacts from planes that are flying in all spaces over the city. And it says, quote, other aviation activities in the area. It refers to those as creating cumulative noise over Scottsdale. In fact, some of those flights, the aviation expert says, that Appendix 2064 fly under, underneath routes that are flying from the Phoenix airport. So if the planes are flying lower, one would think that those planes are in fact noisier. Additionally, the Phoenix, excuse me, Scottsdale's expert says that when planes are flying over Scottsdale from the Phoenix airport, they're in fact more than a mile in the sky. It's again, in Appendix 2062. Finally, FAA's own noise analysis here shows no reportable noise increases over Scottsdale. And that's comparing the pre-2014, the pre-Phoenix noise reports to the post-2014, the flights flying after 2014. That's at Appendix 1906 to 1911. That also goes to Judge Walker and Judge Randolph's questions about whether these flight procedures, excuse me, whether the new, whether the flight routes going east are new. The noise analysis shows that there's no reportable noise increase. These flight procedures follow the same general pathways on the eastern side before 2014, as they follow after 2014 when the area navigation procedures were put in place. That's very different. And now I'm addressing those questions from Judges Walker and Randolph. It's very different from the western flight routes. The western flight routes actually did notably change. And I can point to Appendix 1275 as a visual demonstration of what changed between pre-2014 and post-2014. What you see in that chart is that there's a corner cut. Before 2014, the flight procedures would sort of go down and then make a sharp turn up to go north. The current eastward departure, excuse me, Ruth, were put in place in May of 2018, weren't they? That's correct, Your Honor. So another question I have, and maybe it's not for you, maybe it's for the Council, for the City, is if the objective of the petitioners is to have the routes changed or reconsidered, then isn't that petition out of time since they were put in place in 2018? Yes, Your Honor. And that goes to what I described as the third hurdle that Scottsdale would face before you even consider all of this discussion about the Phoenix Amended Judgment. So the eastern routes that are currently in place, and again, the actual pathways aren't changing, but FAA reissued the eastern routes, all nine of the eastern routes, in May of 2018. When it did so, that provided arguably an opportunity for Scottsdale to challenge those routes. That was a final order. They could have challenged that. 19 months later, they filed this, excuse me, after their 60 days expired, fast forward 19 more months, and you reach their May 2020 petition for review, which now seeks to challenge that May 2018 order. So they're way out of time. And the Phoenix case, even though, by your argument, didn't deal with eastward departures, but it did hold that the final order was the order that put these departure routes in place. And with respect to the east, that's 2018. And so the only way that Scottsdale could possibly confer jurisdiction is if we excuse them for the 19 months delay in filing, which the Phoenix court did, I mean, excuse the city of Phoenix. But I don't know that there's even been any showing of the same sort in this case. That's correct, your honor. And just to give you the record site for where FAA published the May 2018 flight procedures, I would point to appendix 2093 to appendix 2098, 2093 to 2098. That's where the bidirectional procedures are published in May of 2018. So that's the starting clock under Phoenix, as your honor noted, for their 60 days. But let's look at the 19 months here. As you noted, you don't have the same sort of evidence in the record as you do in the Phoenix case that would excuse or provide reasonable grounds for this 19 months delay. I mean, in Phoenix, the court said there were serial promises from FAA and constant or near constant engagement with the petitioners during that period of time when they did not challenge those procedures. And here you don't have either of those things in the record to show serial promises from FAA and near constant engagement for 19 months before Scottsdale petitioned for review. Yeah. So if the court has no further questions, I'm happy to answer questions about the court's judgment in Phoenix case. But our position is this court should dismiss the petition for review on standing grounds, finality and timeliness. All right, Judge Walker, Judge Randolph, any further questions? No. All right. Thank you, Mr. Tabor. I believe you are out of time, but we'll give you two minutes. Thank you, Your Honor. I want to address the question that was raised by Judge Randolph. And that is that the 2018, May order of 2018 did not concern the East flow departure routes at all. The decisions that were made concerned only the West flow departure routes. If you look at Appendix 1350, which is the record of decision, it states very clearly that the, this was the March one, that it approves the West flow area navigation standard instrument departure procedures. And if you look at Appendix 1621, which is the record of decision for the May 2018 order, that also says that it's to implement the West flow area navigation standard instrument departure procedures at Phoenix Sky Harbor Ensign. We are not, we are not trying to address these decisions. We are addressing the January 20th decision that the FAA made and seek its vacature and remand so that the FAA can consider the vacated East flow departure routes. Mr. Tabor, do you agree that whatever label we put on the East bound 2014 routes, new or not new? Do you agree that they overlaid older routes? In the same sense that the West flow overlays older routes as well. That was the conclusion of the FAA as well in that, in the categorical exclusion declaration for the West routes. In the sense that are they new? The flight procedures, if you compare the flight procedures between 2014 and the ones that were vacated, they go ahead East and then take a 90 degree turn instead of heading due West, which is what the ones, the current vacated or the prior 2014 departure routes did. And the other thing, the other question in terms of standing, in terms of standing, we have proven standing. We don't have to do an environmental assessment in order to require, in order to have standing both Lujan versus the defenders of the wildlife state that we would have standing in this case. Unless your honors have any further questions, I see my time is up and we ask that the January 20th decision be vacated and remanded. Thank you. We'll take the matter under advisement.
judges: Wilkins, Walker, Randolph